IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DATAFLOW, INC.; DATAFLOW, LLC;
AND DATAFLOW REPROGRAPHICS,
LLC,

         Plaintiffs,

         v.

PEERLESS INSURANCE COMPANY,

         Defendant.

_____

Civil Action No.
3:11-CV-1127 (LEK/DEP)


APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFFS:

WARD, GREENBERG LAW FIRM          DAVID M. KNAPP, ESQ.
300 State Street                  THOMAS S. D'ANTONIO, ESQ.
Rochester, NY 14614

FOR DEFENDANTS:

MURA, STORM LAW FIRM              ROY A. MURA, ESQ.
14 Lafayette Square               ERIC T. BORON, ESQ.
930 Rand Building
Buffalo, NY 14203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiffs Dataflow, Inc., Dataflow, LLC, and Dataflow Reprographics, LLC (collectively "Dataflow") have commenced this action against defendant Peerless Insurance Company ("Peerless"), their insurer, principally seeking a declaration that they are entitled to coverage for losses caused by a former employee's theft of company monies, now estimated to exceed $1.2 million, above and beyond the $75,000 that Peerless has agreed to pay under the controlling policies. Discovery has been completed in the action, and dispositive motions are anticipated shortly.

Through pretrial discovery, Dataflow has learned that Peerless failed to preserve some e-mails reflecting exchanges among Peerless personnel directly related to Dataflow's insurance claim. Plaintiff now moves for the imposition of sanctions based on Peerless' failure to preserve those relevant e-mail communications. For the reasons set forth below, I recommend that plaintiffs' motion be granted, and that the trial court issue an adverse inference instruction to the jury regarding the destroyed e-mails, and award Dataflow the costs associated with bringing the motion.

## I.     BACKGROUND

### A.     Allegations Underlying Plaintiffs' Claims

Peerless issued to each of the three Dataflow plaintiffs in this case a series of annual Commercial Protector Policies with coverage beginning on October 1, 2007, and extending through October 1, 2010.  Compl. (Dkt. No. 1) at ¶¶ 24-36.  Those policies provided coverage for losses or injuries caused by employee dishonesty, including, without limitation, acts of employee defalcation, embezzlement, misappropriation, diversion of assets, and fraud.  *Id.* at ¶ 47.  The policies also included various coverage extensions, including for losses under the accounts receivable, valuable papers and records, forgery and alteration, monies and securities, claim data, and commercial protector liability provisions of the policies.  *Id.* at ¶ 48.

Prior to March 2010, Brian Steele was employed by Dataflow as the company's manager of accounting.  Compl. (Dkt. No. 1) at ¶ 49.  In that position, Steele was responsible for managing plaintiffs' accounting, cash management, accounts receivable, and accounts payable functions.  *Id.* at ¶ 50.  Through various acts described in the complaint, Steele misappropriated over $1.2 million from Dataflow between approximately

2005 and March 2010.[1]  *Id.* ¶¶ 52-58.

Upon discovering Steele's conduct, Dataflow promptly submitted a claim to Peerless, provided a sworn proof of loss form estimating the resulting losses at more than $900,000, and thereafter cooperated with an investigation by Peerless into the matter.  Compl. (Dkt. No. 1) at ¶¶ 71-72.  In response to the claim, Stephen Maxwell, a Peerless claims adjuster, sent three letters, one to each of the three Dataflow companies, on July 26, 2010.  Knapp Decl. Exh. 1 (Dkt. No. 30-2).[2]  The letters notify Dataflow that, according to the applicable insurance policies, "the limit available in the matter of Brian Steele is $25,000 . . . and an additional $50,000 for losses in excess of $25,000[.]"  *Id.*  The letters also informed Dataflow that a forensic accountant had been assigned to calculate the recoverable loss, and requested additional details and documents from Dataflow.  *Id.*; Compl. Exh. A (Dkt. No. 1).  In those letters, Maxwell stated the following:

> We will conduct our investigation under a full
> reservation of the [Peerless'] rights.  Our

---

[1]  On or about February 15, 2011, Steele pleaded guilty to felony grand larceny and forgery charges, and acknowledged misappropriating at least $900,000 from Dataflow.  Compl. (Dkt. No. 1) at ¶ 61.

[2]  Attorney Knapp's unredacted declaration is reproduced at Docket Number 45.  Because that unredacted version is filed under seal, and the redacted version (Dkt. No. 30-1) has most of the relevant exhibits attached (Dkt. Nos. 30-2, 30-3), I will primarily cite to the redacted version.

> investigation does not prejudice our right to disclaim
> coverage later. Please understand that we are not
> denying the coverage or protection afforded under
> your policy. This letter does not waive but specifically
> reserves all our rights and defenses under the policy.

Knapp Decl. Exh. 1 (Dkt. No. 30-2); Compl. Exh. A (Dkt. No. 1).

On November 4, 2010, Dataflow forwarded the requested documents to Peerless, including revised affidavits and corresponding proof of loss forms pertaining to Steele's misconduct. Knapp Decl. Exh. 9 (Dkt. No. 30-2). That submission was followed by an e-mail from Brett Chamberlain, another Peerless claims adjuster, advising Dataflow's principals that their claim had been reassigned to him. Knapp Decl. Exh. 10 (Dkt. No. 30-2).

On December 20, 2010, Chamberlain sent a letter to Dataflow, Inc.,[3] enclosing copies of loss audit reports prepared by Deborah Allen Bok, the auditor assigned to Dataflow's claims. Knapp Decl. Exh. 11 (Dkt. No. 30-3). The reports found that Dataflow, Inc., was entitled to only $75,000 in coverage according to the applicable policy. *Id.* In response, Dataflow e-mailed Chamberlain inquiring into the disposition of the claims filed on behalf of Dataflow, LLC, and Dataflow Reprographics, LLC. Knapp Decl.

---

[3]     Chamberlain's letter was issued only to Dataflow, Inc., and not the other two Dataflow companies. Knapp Decl. Exh. 11 (Dkt. No. 30-3).

Exh. 12 (Dkt. No. 45-2) (under seal). Dataflow also inquired into whether Peerless planned to provide coverage under additional provisions of the insurance policy that covered loss due to forgery, money and securities, accounts receivable, loss information and damage records losses for all three companies. *Id.* Formal coverage denial letters were issued to Dataflow, LLC, and Dataflow Reprographics, LLC, on January 3, 2011, denying all coverage on the basis that Steele did not appear to have been employed by either of those companies. Knapp Decl. Exh. 13 (Dkt. No. 30-3). Those letters further advised that Peerless was denying coverage under the "coverage extensions" for theft and forgery by non-employees on the grounds that the "false pretense" and "dishonesty" exclusions applied. *Id.*

B.    <u>Facts Surrounding the Pending Discovery Dispute</u>

Early in discovery, Dataflow served Peerless with a first request for the production of documents ("RFP") that sought documents falling into several specified categories, including:

**<u>DOCUMENT REQUEST NO. 7</u>**

All documents concerning any investigation, evaluation or analysis conducted by Peerless concerning any claim made by Dataflow relating to the acts or omissions of Brian Steele.

6

**DOCUMENT REQUEST NO. 10**

All documents concerning any denial of coverage, or limitation or restriction on coverage under any Peerless policy issued to Dataflow.

**DOCUMENT REQUEST NO. 14**

All documents concerning any claim made by Dataflow to Peerless for losses relating to the acts or omissions of Brian Steele described in the Complaint in this action, including but not limited to any claim files maintained by Peerless with respect to Dataflow.

Knapp Decl. Exh. 14 (Dkt. No. 30-3). Peerless objected to each of these three demands on the grounds of vagueness, ambiguity, overbreadth, and undue burden, but nonetheless produced responsive documents "[s]ubject to without waiving or limited [those] objections[.]" Knapp Decl. Exh. 15 (Dkt. No. 30-3). Peerless argues that it provided Dataflow with "a voluminous number of pages and documents" in response to Dataflow's first RFP on February 9, 2012. Boron Decl. (Dkt. No. 37) at ¶ 27. According to Dataflow, however, defendants' production neither included any internal communications reflecting an analysis of Dataflow's claims, nor disclosed that potentially responsive internal e-mail communications had been deleted. Knapp Decl. (Dkt. No. 30-1) at ¶ 17. Peerless followed that initial production with seven supplemental sets of discovery

responses and objections.  Boron Decl. (Dkt. No. 37) at ¶ 60; Boron Decl.

Exhs. 14-20 (Dkt. Nos. 37-1, 37-2, 37-3, 37-4, 37-6).  In addition, Peerless

provided Dataflow with an initial and two supplemental privilege logs.

Knapp Decl. (Dkt. No. 37) at ¶ 61; Knapp Decl. Exhs. 21, 22 (Dkt. Nos.

37-10, 37-6).

Plaintiff served a second RFP on June 14, 2012, containing more

narrow requests for documents falling into the following four categories:

### DOCUMENT REQUEST NO.1

> All documents, including drafts of documents,
> concerning Peerless' assessments,
> evaluations, reviews, decisions and/or
> determinations regarding coverage for
> Dataflow, Inc, under the Peerless Policies
> issued to Dataflow, Inc. for the Claims made by
> Dataflow, Inc., related to the acts or omissions
> of Brian Steele described in the complaint in
> this action.

### DOCUMENT REQUEST NO.2

> All documents, including drafts of documents,
> concerning Peerless' assessments,
> evaluations, reviews, decisions and/or
> determinations regarding coverage for
> Dataflow, LLC, under the Peerless Policies
> issued to Dataflow, LLC for the Claims made by
> Dataflow, LLC, related to the acts or omissions
> of Brian Steele described in the complaint in
> this action.

**DOCUMENT REQUEST NO.3**

> All documents, including drafts of documents, concerning Peerless' assessments, evaluations, reviews, decisions and/or determinations regarding coverage for Dataflow Reprographics, LLC, under the Peerless Policies issued to Dataflow Reprographics, LLC, for the Claims made by Dataflow Reprographics, LLC, related to the acts or omissions of Brian Steele described in the complaint in this action.

**DOCUMENT REQUEST NO. 4**

> All documents used, reviewed and/or relied upon by Peerless in assessing, evaluating, reviewing, and/or making a determination(s) regarding coverage for Dataflow, Inc., Dataflow, LLC and Dataflow Reprographics, LLC with respect to the Claims made by Dataflow, Inc., Dataflow, LLC and Dataflow Reprographics, LLC related to the acts or omissions of Brian Steele described in the complaint in this action.

Knapp Decl. Exh. 16 (Dkt. No. 30-3). In addition, on July 1, 2012, plaintiffs' counsel wrote a letter to defendant's attorney inquiring about defendant's failure to produce internal communications and other documents related to the analysis of Dataflow's coverage claim in response to plaintiff's first RFP. Knapp Decl. Exh. 17 (Dkt. No. 30-3).

In December 2012, Dataflow deposed Chamberlain, the Peerless claims adjuster assigned to Dataflow's claim. Knapp Decl. (Dkt. No. 30-1)

9

at ¶ 22.  During that deposition, Chamberlain testified that various e-mails were exchanged by Peerless employees regarding Dataflow's claim, and confirmed that, in general, e-mail was routinely used at Peerless to communicate about claims.  Knapp Decl. (Dkt. No. 30-1) at ¶¶ 22-23; Knapp Decl. Exh. 20 (Dkt. No. 30-3).

The day after Chamberlain's deposition, Dataflow specifically demanded that Peerless produce the e-mails and documents identified by Chamberlain during his deposition because, according to Dataflow, up until then, Peerless had yet to produce any of these materials in response to its first or second RFP.  Knapp Decl. (Dkt. No. 30-1) at ¶¶ 22, 24, 25. On January 28, 2013, defendant's counsel advised plaintiff's attorneys that the requested e-mails are no longer available due to a "system change at some point subsequent to May 19, 2010[.]"  Knapp Decl. (Dkt. No. 30-1) at ¶ 29; Knapp Decl. Exh. 24 (Dkt. No. 30-3).  Plaintiffs' attorneys promptly responded by letter dated January 31, 2013, requesting additional information concerning the "system change."  Knapp Decl. Exh. 25 (Dkt. No. 30-1).  On February 15, 2013, Peerless' counsel advised that Peerless had undertaken a system-wide upgrade, beginning in February 2011, that resulted in "automatic deletions" of all e-mails not

other wise marked for preservation in each of a Peerless employee's

account.  Knapp Decl. Exh. 26 (Dkt. No. 30-3).  That letter also informed

plaintiffs' counsel that the change had been implemented on a staggered

basis over a twelve-month period, and the automatic deletion occurred at

the fourteenth week of each employees' upgrade date.[4]  *Id.*  According to

Linda Milton, a Peerless commercial underwriter, Peerless employees

were sent a warning notice prior to the e-mail upgrade advising them of

the upgrade's anticipated effect upon the retention of e-mails.  Knapp

Decl. Exh. 29 (Dkt. No. 30-3).

On February 21, 2013, Dataflow's counsel wrote to defendants'

attorney inquiring as to whether the e-mails deleted through the system-

wide upgrade could be retrieved using other, alternative sources.  Knapp

Decl. (Dkt. No. 45) ¶ 32 and Exh. 27.  Although Peerless failed to respond

to that inquiry, at oral argument held before the court in connection with

this motion, counsel for Peerless represented that, to the extent of his

knowledge, there is no means of resurrecting the deleted e-mails.

At all times relevant to plaintiffs' claims, Peerless had in place a

policy governing document retention.  Knapp Decl. Exh. 30 (Dkt. No. 45-2)

---

[4]        There is no record evidence as to when the upgrade was implemented
for the Peerless employees involved in Dataflow's claim.

(under seal).  Pursuant to that policy, employees must retain all business records related to a claim made under a commercial property policy for a period of six years after the claim is either paid or denied, and any disputes regarding the claim have been settled.  *Id.*

II.    <u>PROCEDURAL HISTORY</u>

On May 9, 2011, plaintiffs commenced this action in Broome County Supreme Court generally alleging that defendant breached the relevant contracts for insurance coverage when it denied all but $75,000 of plaintiffs' insurance claim.  *See generally*  Dkt No. 1.  As relief, plaintiffs request a declaration from the court that (1) they properly qualify as insured parties under the policies in question; (2) they are entitled to full and complete coverage from Peerless for the losses caused by the misappropriation of company funds by Brian Steele; and (3) the refusal of Peerless to provide coverage, in excess of $75,000, constitutes a breach of the relevant insurance contracts.  *Id.*  The action was subsequently removed to this court by Peerless on September 22, 2011.  *Id.*

Following the close of discovery, Dataflow filed a motion seeking a finding of spoliation based upon defendant's failure to adopt a proper litigation hold that would insure the preservation of relevant documents,

and requesting the court find that, through its actions, Peerless has waived all coverage defenses not raised in the July 26, 2010 and January 3, 2011 coverage letters. Dkt. No. 45. Dataflow also seeks additional sanctions, including an award of costs and attorney's fees associated with bringing the motion. *Id.*

In opposition to plaintiffs' motion, Peerless argues that, at worst, its conduct was negligent, and does not warrant the imposition of sanctions.[5] Dkt. No. 37. Dataflow has since replied in further support of its motion.[6] Dkt. No. 42. Plaintiffs' motion, which is now fully briefed and ripe for

---

[5] In its opposition to plaintiffs' motion, Peerless challenges plaintiffs' reliance upon portions of deposition transcripts that are included as exhibits to plaintiffs' attorney declaration. Def.'s Memo. of Law (Dkt. No. 37-7) at 15. Specifically, defendant argues that the deposition excerpts should not be considered by the court because they are not properly authenticated. *Id.* Because those deposition excerpts are attached to an attorney's declaration, and include both a cover and title page, they are properly authenticated under Rule 901 of the Federal Rules of Evidence, which provides, in pertinent part, that evidence can be authenticated by "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all circumstances." Fed. R. Civ. P. Evid. 901(b)(4); *see also Comm. Data Servers, Inc. v. Int'l Bus. Machs. Corp.,* 262 F. Supp. 2d 50, 59 (S.D.N.Y. 2003). In any event, any improper authentication has now been cured through plaintiff's reply, which attached the missing reporter certifications for those deposition transcripts. *Thailand Tycoons Worldwide Grp. (Thailand) Public Co., Ltd. v. GBL Supply Inc.,* 721 F. Supp. 2d 194, 200 (S.D.N.Y. 2010)

[6] Counsel for plaintiffs is respectfully reminded that, pursuant to rule 7.1(b) of the local rules of practice for this court, a moving party is not permitted to file reply papers in connection with a pending, non-dispositive motion without the court's prior permission. N.D.N.Y. L.R. 7.1(b)(2). However, for the sake of judicial efficiency, and because defendant has not objected to the filing of plaintiff's reply, I have considered those papers.

determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and rule 72.3 of the local rules of practice for this court.  Dkt. No. 41.

III.   DISCUSSION

Plaintiffs' motion implicates a doctrine known as "spoliation," which is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999) (citing *Black's Law Dictionary* 1401 (6th ed. 1990)).  For obvious reasons, one who engages in spoliation should not be permitted to benefit from such wrongdoing.  *West*, 167 F.3d at 779. Where a court finds that spoliation has been proven, it "has wide latitude in determining an appropriate sanction[.]"  *Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 196 (N.D.N.Y. 2009) (Suddaby, J.) (internal quotations omitted).  "Traditional sanctions for spoliation include preclusion, monetary sanctions, or an adverse inference instruction." *Aktas v. JMC Dev. Co., Inc.,* 877 F. Supp. 2d 1, 16 (N.D.N.Y. 2012) (D'Agostino, J.) (*citing Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002)).

14

A.    Whether Spoliation Has Been Proven

A finding of spoliation, and the corresponding imposition of

sanctions, is appropriate when a moving party has demonstrated

> (1) that the party having control over the evidence
> had an obligation to preserve it at the time it was
> destroyed; (2) that the records were destroyed with a
> culpable state of mind; and (3) that the destroyed
> evidence was relevant to the party's claim or defense
> such that a reasonable trier of fact could find that it
> would support that claim or defense.

*Chin v. Port Auth. of NY and NJ*, 685 F.3d 135, 162 (2d Cir. 2012)

(internal quotation marks omitted).

1.    Duty of Preservation

"The obligation to preserve evidence arises when the party has

notice that the evidence is relevant to litigation or when a party should

have known that the evidence will be relevant to the future litigation."

*Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 436 (2d Cir. 2001) (citing

*Kronisch v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998)).

In this case, Dataflow argues that Peerless should have reasonably

anticipated litigation by July 26, 2010, which is the date that Peerless

issued a letter to Dataflow explaining that coverage appeared to be limited

to $75,000, and assigning a forensic accountant to Dataflow's claim for

further investigation.  Knapp Decl. Exh. 1 (Dkt. No. 30-2); Compl. Exh. A

(Dkt. No. 1).  That letter, however, did not represent a denial of coverage

altogether, and expressly requested additional documentation from

Dataflow to substantiate its claim.  *Id.*  Because this letter signals that

Peerless engaged in an ongoing investigation of Dataflow's claims at the

time, I cannot conclude that Peerless should have known then that

litigation was reasonably likely.

The same cannot be said, however, for Peerless' letters to Dataflow

dated January 3, 2011, which communicated its final decisions regarding

Dataflow's claims.  Knapp Decl. Exh. 13 (Dkt. No. 30-3).  In that letter,

Peerless definitively limited coverage for Dataflow, Inc., to $75,000, and

denied any coverage to the other two Dataflow companies.  *Id.*  At the

time Peerless issued that letter, it was aware that Dataflow had retained

an attorney, had communicated both directly and indirectly with that

attorney, and knew that $75,000 was hundreds of thousands of dollars

less than the amount claimed by Dataflow.  These facts are sufficient to

find that Peerless should have anticipated litigation when that letter was

sent.  *See Aktas*, 877 F. Supp. 2d at 13 (finding that the plaintiffs knew

"litigation was imminent," and therefore the duty to preserve evidence

attached, where, *inter alia*, the plaintiffs were aware that the defendant was represented by and had negotiated with counsel); *Wade*, 686 F. Supp. 2d at 194 (finding that the plaintiff's duty to preserve documents attached where, *inter alia*, "the magnitude of the losses was significant"). Accordingly, I conclude that Peerless' duty to preserve relevant evidence in connection with Dataflow's claim attached on January 3, 2011.

### 2.   Culpable State of Mind

To warrant the imposition of spoliation sanctions, a party's failure to preserve evidence must, at a minimum, constitute simple negligence. *Wade*, 686 F. Supp. 2d at 194-95 (citing *Residential Funding Corp.,* 306 F.3d at 108). "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003).

In this instance, the failure of Peerless to preserve e-mails related to Dataflow's claim transcended ordinary negligence. According to Chamberlain's deposition testimony, Peerless employees regularly use e-mail to correspond internally concerning claims. Knapp Decl. Exh. 20 (Dkt. No. 30-3). For example, Chamberlain testified that he had received e-mails from another Peerless claims adjuster that had worked on other

claims involving employee dishonesty.  *Id.*  Those e-mails included

suggestions for how to handle those types of claims, as well as "what to

watch out for as far as deductibles, coverages, limits."  *Id.*  In addition,

Chamberlain testified that he had communicated with other Peerless

employees via e-mail about Dataflow's specific claim.  *Id.*

Despite the existence of all of these e-mails, Peerless effectively

and predictably caused the deletion of all e-mails not specifically ear-

marked for preservation through its system upgrade beginning in February

2011.  The record is devoid of any evidence, as acknowledged by

defendant's counsel during oral argument, that a litigation hold was

implemented to insure the preservation of relevant and potentially

discoverable evidence pertaining to plaintiff's claim at any time, including

once litigation was reasonably anticipated.[7]  Assuming that the system

upgrades of all the Peerless employees that worked on Dataflow's claim

began on February 1, 2011, the destruction of their e-mail accounts

occurred fourteen weeks later, which is eighteen weeks after Peerless

should have known that litigation was likely and the obligation to preserve

---

[7]    While not dispositive, failure to implement a litigation hold is one factor a
court may consider when determining whether a party was grossly negligent in its
failure to preserve (or render unavailable) relevant, discoverable evidence.  *Chin*, 685
F.3d at 162.

evidence under the common law had attached.  There is no record evidence, however, demonstrating that anyone at Peerless took steps to preserve any e-mails related to Dataflow's claim.  There is record evidence, however, revealing that Peerless employees were warned that the upgrade would involve the deletion of e-mails not otherwise marked for preservation, Knapp Decl. Exh. 29 (Dkt. No. 30-3), and defendant has submitted no evidence to the contrary.  In addition, the deletion of those e-mails was in direct violation of the record retention policy in place at Peerless at the time of Dataflow's claim.  Knapp Decl. Exh. 30 (Dkt. No. 45-2) (under seal).  Under all of these circumstances, I find that Peereless' failure to preserve the e-mails related to Dataflow's claim constituted gross negligence.

3.    Relevance

Were the court to conclude that the failure of Peerless to preserve evidence relating to plaintiffs' claim constituted simple negligence, to qualify for spoilation sanctions, Dataflow would additionally be required to prove that the destroyed evidence was relevant to a claim or defense in the action.  *Wade*, 686 F. Supp. 2d at 195 (citing *Zubulake,* 220 F.R.D. at 220).  In the context of spoliation,

> 'relevant' . . . means something more than sufficiently
> probative to satisfy Rule 401 of the Federal Rules of
> Evidence.  Rather, the party seeking [sanctions] must
> adduce sufficient evidence from which a reasonable
> trier of fact could infer that the destroyed . . .
> evidence would have been of the nature alleged by
> the party affected by its destruction.

*Residential Funding Corp.,* 306 F.3d at 108-09 (internal quotation marks

and footnote omitted).  However, where a court finds that a party's failure

to preserve evidence results from gross negligence, the party seeking

sanctions may be relieved of its obligation to prove relevance.  *See id.* at

109 ("[W]here a party seeking an adverse inference adduces evidence

that its opponent destroyed potential evidence (or otherwise rendered it

unavailable) . . . through gross negligence (satisfying the 'culpable state of

mind' factor), that same evidence of the opponent's state of mind will

frequently also be sufficient to permit a jury to conclude that the missing

evidence is favorable to the party (satisfying the 'relevance' factor).").

In this case, because I recommend a finding that Peerless'

destruction of e-mail communications related to Dataflow's claims

amounted to gross negligence, if that recommendation is accepted, the

requirement that Dataflow demonstrate relevance will be obviated, and the

court may properly conclude that the missing evidence would have been

unfavorable to Peerless. *Residential Funding*, 306 F.3d at 109.

B. <u>Appropriate Sanctions</u>

Courts are invested with broad discretion in imposing an appropriate sanction for spoliation. *West*, 167 F.3d at 779. The sanctions available to a court to redress an improper spoliation range widely in severity, and can include dismissal of an action "if the spoliation was done with wilfulness, bad faith, or fault on the part of the sanctioned party." *Wade,* 686 F. Supp. 2d at 196 (quoting *Allstate Ins. Co. ex rel. Lothridge v. Gonyo*, No. 07-CV-1011, 2009 WL 962698, at *8 (N.D.N.Y. Apr. 8, 2009) (Treece, M.J.)). The sanction imposed should "serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Beers v. Gen. Motors Corp.*, No. 97-CV-0482, 1999 WL 325378, at *3 (N.D.N.Y. May 17, 1999) (McCurn, J.) (internal quotation marks omitted); *accord, Gonyo*, 2009 WL 962698, at *8. When applying this principle, a court should impose a sanction designed to

> (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'

*Beers*, 1999 WL 325378, at *8 (quoting *Kronisch,* 150 F.3d at 126).

A common sanction imposed by the court to punish a party's spoliation is the inclusion of a spoliation instruction as part of the court's jury charge, in which the jury is instructed that it may draw an adverse inference based upon the destruction. *Chin*, 685 F.3d at 162. Among the purposes to be served by an adverse inference instruction "is to restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Aktas*, 877 F. Supp. 2d 17 (citing *Kronisch*, 150 F.3d at 126). The decision of whether to issue an adverse inference instruction based upon lost evidence rests within the discretion of the trial court. *Chin*, 685 F.3d at 162. Moreover, "a finding of gross negligence merely permits, rather than requires, a district court to give an adverse inference instruction." *Id.* at 162; *Residential Funding Corp.*, 306 F.3d at 109.

In this case, I recommend that the trial court issue an adverse inference instruction to the jury regarding the missing Peerless e-mails for three reasons. First, Peerless' failure to acknowledge that it destroyed an unknown amount of e-mails that were potentially relevant to this action until one year after Dataflow served its first RFP, and only two weeks prior to the close of discovery, demonstrates its attempt to obfuscate that fact in

bad faith.  Specifically, it appears from the record that Peerless only

disclosed that it upgraded its computer system once it was backed into a

corner by Dataflow asking for a particular e-mail, even though plaintiff's

previous RFPs and letters from counsel should have resulted in that

disclosure.  For example, Dataflow's second RFP asked for any

documents related to Peerless' "assessments, evaluations, reviews,

decisions and/or determinations regarding coverage" for the three

Dataflow companies.  Knapp Decl. Exh. 16 (Dkt. No. 30-3).  That RFP

was closely followed by a letter from Dataflow's attorney inquiring into the

absence of any internal communications in Peerless' production of

documents.  Knapp Decl. Exh. 17 (Dkt. No. 30-3).  Peerless' response to

these requests failed to disclose that it had implemented a computer

upgrade that resulted in the deletion of e-mails.  Knapp Decl. Exhs. 18, 19

(Dkt. No. 30-3).  Only after Dataflow deposed Chamberlain in December

2012 did it discover that e-mails and a claim log existed that were

responsive to Dataflow's earlier RFPs and attorney letters.  This revelation

resulted in the production of Peerless' claim log, but Peerless continued to

hide that no relevant e-mails could be produced because they were

destroyed.  It took over two months after Chamberlain's deposition for

Peerless to acknowledge the destruction of e-mails, and it did so only after Dataflow's attorney asked for one specific e-mail disclosed in the claim log. From the court's perspective, Dataflow's relentless efforts to determine the source of an obvious deficit in Peerless' production, and Peerless' vague and unresponsive answers to these efforts together demonstrate that Peerless intended to conceal the information regarding its system upgrade from Dataflow.

Second, because Peerless has been involved "in hundreds of lawsuits since 2005," Knapp Decl. Exh. 32 (Dkt. No. 30-3), I find that Peerless should be familiar with its legal obligations, including its duty to preserve relevant evidence under the common law.

Third, despite that Peerless' system upgrade was implemented on a staggered basis over a twelve-month period, and that Peerless employees were provided adequate warning and time to preserve the necessary information subject to destruction, there is no record evidence that any employee at Peerless took any steps reasonably calculated to effectuate the preservation of potentially relevant e-mail communications. This failure violated both Peerless' internal records retention policy, and the duty to preserve relevant evidence under the common law.

Based upon all of these circumstances, I recommend that the trial court administer an adverse inference instruction informing the jury that it may infer that any deleted e-mail communications involving Dataflow's claim with Peerless included information about Peerless' possible defenses to coverage, and, as a result of Peerless' failure to preserve those e-mail communications, the jury may further infer that any defense not included in Peerless' coverage letters to any of the Dataflow companies dated January 3, 2011, was deemed unviable to Peerless at the time they were issued.

Although I do not find that Dataflow's request that the court deem waived any defense not included in Peerless' letters dated January 3, 2011 is warranted, I do find it appropriate to award Dataflow with the attorney's fees and costs associated with bringing this motion is appropriate. As I have previously stated, Peerless' conduct in this case, in the face of Dataflow's relentless efforts to uncover the source of an obvious deficit in Peerless' production, demonstrates that Peerless intentionally hid the fact that it had destroyed potentially relevant information in the course of upgrading its computer system at the same time it was under a duty to preserve evidence. These circumstances

justify the additional sanction of awarding costs. *See* Fed. R. Civ. P. 37(c) (authorizing the award of attorney's fees for a party's failure to provide information); *Star Direct Telecom, Inc. v. Global Crossing Bandwith, Inc.*, No. 05-CV-6734, Report and Recommendation Dated Mar. 22, 2012, at *11 (E.D.N.Y. 2012) (avail. on PACER) (noting that attorney's fees and costs may be awarded where a court finds spoliation); *see also Travelers Prop. Cas. of Am. ex rel. Goldman v. Pavilion Dry Cleaners*, No. 04-CV-1446, 2005 WL 1366530, at *4 (D. N.J. June 7, 2005) ("[M]onetary sanctions, like fines, attorneys' fees and costs . . . may be appropriate [in the context of spoliation] to punish the offending party for its actions or to deter litigant's conduct, sending the message that egregious conduct will not be tolerated.") (citing *U.S. v. Phillip Morris USA, Inc.*, 327 F. Supp. 2d 21, 26 (D. D.C. 2004)); *accord, In re WRT Energy Secs. Litig.*, 246 F.R.D. 185, 201 (S.D.N.Y. 2007) (awarding monetary sanctions, including attorney's fees and costs associated with bringing the motion for sanctions, as a result of the non-moving party's spoliation of evidence).

IV.   SUMMARY AND RECOMMENDATION

As a company operating for more than seventy-five years in the insurance field, Peerless surely must appreciate the importance of maintaining accurate and complete files with regard to claims submitted by its insureds, particularly those that are denied, in whole or part, and consequently will potentially ripen into coverage litigation.  In this case, Peerless' failure to insure the retention of such records was both grossly negligent and irresponsible, especially in light of the fact that Peerless implemented the system upgrade resulting in the destruction of the e-mails over a twelve-month period and gave adequate warning to each of its employees of its effect on e-mail retention.  Those deleted e-mails may have shed light on internal discussions regarding Dataflow's claim, and the bases considered for partially denying it.

Based upon the circumstances presented, I conclude that the issuance of a adverse inference jury instruction, together with an award of costs, is appropriate.  These sanctions will serve to both minimize any prejudice to Dataflow and deter Peerless and others from engaging in similar conduct.  Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's motion for a finding of spoliation

and sanctions (Dkt. No. 30) be GRANTED, and it is further

RECOMMENDED that the trial court administer an adverse inference instruction informing the jury that it may infer that any deleted e-mail communications involving Dataflow's claim with Peerless included information regarding Peerless' possible defenses to coverage, and, as a result of Peerless' failure to preserve those e-mail communications, the jury may further infer that any defense not included in Peerless' coverage letter to Dataflow dated January 3, 2011, was deemed unviable to Peerless at the time they were issued; and it is further

RECOMMENDED that the trial court award Dataflow the costs and attorney's fees associated with bringing this motion. In the event this recommendation is adopted, the parties are instructed to engage in a good-faith effort to agree on the amount to which Dataflow's counsel is entitled. Counsel for Dataflow is instructed to provide the trial court with a status report detailing the progress of the parties' good-faith efforts no later than thirty days after the issuance of any order adopting this recommendation.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed

with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:    June 6, 2013
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge